**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **DEAN STOCKWELL, on behalf of himself and all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**ORACLE CORPORATION and THE ESTEE LAUDER COMPANIES INC.,**<br><br>Defendants. | **CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Case No. 1:26-cv-02193 |

Plaintiff, Dean Stockwell ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants, Oracle Corporation ("Oracle") and The Estee Lauder Companies Inc. ("Estee Lauder" and collectively, "Defendants"). Plaintiff alleges the following on information and belief, except as to his own actions, counsel's investigations, and facts of public record.

## I. NATURE OF ACTION

1. This class action arises from Defendants' failure to adequately protect the highly sensitive personally identifiable information ("PII" or "Private Information") that they obtained from Plaintiff and Class Members—including, for example, Social Security numbers, direct deposit information, and banking information.

2. Defendant Oracle is a multinational technology and enterprise software firm based in Austin, Texas.[1] Defendant Oracle provides database software and cloud computing software services to companies across the United States, including to Defendant Estee Lauder.

[1] *About Oracle*, Oracle Corporation, https://www.oracle.com/corporate/ (last visited June 21, 2026).

3. Defendant Estee Lauder is "one of the world's leading manufacturers, marketers, and sellers of quality skin care, makeup, fragrance, and hair care products."[2] Defendant Estee Lauder is a client of Oracle.

4. As a result of Defendants' failure to adhere to industry standards and implement reasonable data security measures, the Russian cybercriminal syndicate "CL0P" acquired the private information of Plaintiff and Class Members during a targeted data breach in or around August 2025 (the "Data Breach").

5. On July 10, 2026, Defendant Estee Lauder reported that it suffered a data breach to the Vermont Attorney General, stating that the Data Breach compromised Private Information including, but not limited to, Social Security Numbers, Financial Account Codes, Credit and Debit Account Info, Government ID Numbers, Health Records.[3]

6. On July 17, 2026, Defendant Estee Lauder began sending letters to impacted individuals (the "Notice Letter").[4]

7. According to the Notice Letter, Defendant Estee Lauder became aware of a cybersecurity issue involving a vulnerability in the Oracle E-Business Suite system, which is used by Defendant Estee Lauder for HR management purposes.[5] On June 19, 2026, Defendant Estee Lauder determined through its investigation that on or around August 9, 2025, an unauthorized third party gained access to the Oracle E-Business Suite system and obtained personal information of certain individuals.[6]

---

[2] *Who We Are*, ESTEE LAUDER, https://www.elcompanies.com/en/who-we-are (last visited July 16, 2026).
[3] Office of the Vermont Attorney General, Security Breach Notices, https://ago.vermont.gov/categories/security-breach-notices (last visited July 16, 2026).
[4] *See* Exhibit A – Plaintiff Stockwell's Notice Letter.
[5] *Id.*
[6] *Id.*

8. The impacted Private Information included names, postal and email addresses, dates of birth, Social Security numbers, passport numbers, financial account information, health information, and employment-related information.[7]

9. Plaintiff brings this Class Action Complaint against Defendants for their failure to properly secure and safeguard the Private Information that they collected and maintained as part of their regular business practices.

10. Plaintiff's and Class Members' Private Information was compromised due to Defendants' negligent and/or careless acts and omissions and their utter failure to protect Plaintiff's and Class Member' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' Private Information because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk of identity theft and fraud to victims of the Data Breach will remain for their respective lifetimes.

11. In breaching its duties to properly safeguard Plaintiff's and Class Members' Private Information and give them timely, adequate notice of the Data Breach's occurrence, Defendants conduct amounts to negligence and/or recklessness and violates federal and state statutes.

12. Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendants' failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendants' inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendants' conduct amounts at least to negligence and violates federal and state statutes.

---

[7] *Id.*

13. Defendants disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

14. Plaintiff and Class Members have suffered injury as a result of Defendants' conduct. These injuries include: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) actual misuse of the compromised data consisting of an increase in spam calls, texts, and/or emails; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

15. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of himself, and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendants inadequate data

security practices.

## II. PARTIES

16. Plaintiff, Dean Stockwell, is a natural person and a citizen of Kennesaw, Georgia.

17. Defendant Oracle is a corporation incorporated in Delaware and with its principal place of business at 2300 Oracle Way, Austin, Texas, 78741. The registered agent for service of process is Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

18. Defendant Estee Lauder is a corporation incorporated in Delaware with its principal place of business at 767 Fifth Avenue, New York, NY 10153.

## III. JURISDICTION & VENUE

19. The Court has subject-matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs, there are more than 100 putative Class Members, and at least one Class Member is a citizen of a state that is diverse from each Defendant's citizenship. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20. The Court has general personal jurisdiction over Defendants because, personally or through their agents, Defendants operate, conduct, engage in, or carry on a business or business venture in this State.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant Oracle is based in this District, and the acts and omissions giving rise to Plaintiff's and Class Members' claims occurred in and emanated from this District.

## IV. BACKGROUND

### A. *Defendants Collected and Maintained Plaintiff's and Class Members' Private Information to Operate and Facilitate their Respective Businesses.*

22. Defendant Oracle is a multinational technology and enterprise software firm that provides database software services.

23. Defendant Estee Lauder is "one of the world's leading manufacturers, marketers, and sellers of quality skin care, makeup, fragrance, and hair care products."[8] As part of its business, Defendant Estee Lauder receives and maintains the Private Information of thousands of its current and former employees.

24. Relevant here, is Defendant Oracle's Oracle E-Business Suite ("Oracle EBS") which Defendant Oracle advertises as "a complete set of business applications for managing and automating processes across your enterprise."[9]

25. Oracle explains that "[t]housands of organizations around the world rely on Oracle E-Business Suite to run their key business operations."[10]

26. In the regular course of its business, Defendant Oracle obtains the personally identifiable Private Information of millions of people—including, but not limited to, names, dates of birth, Social Security numbers, driver's license numbers, passport numbers, government ID numbers, tax ID numbers, contact information, telephone numbers, email addresses, physical addresses, financial account information (including routing numbers and account numbers), and payment card numbers (e.g., debit card numbers, credit card numbers).

27. Defendant Estee Lauder is a client of Defendant Oracle, and used the Oracle EBS

---

[8] *Who We Are*, ESTEE LAUDER, https://www.elcompanies.com/en/who-we-are (last visited July 16, 2026).

[9] Oracle® E-Business Suite User's Guide, ORACLE, https://docs.oracle.com/cd/E18727_01/doc.121/e12896/T27641T27643.htm

[10] Oracle E-Business Suite, ORACLE, https://www.oracle.com/applications/ebusiness/

to manage and store the Private Information of individuals in its systems.

28. Upon information and belief, Defendants made promises and representations that the PII they collect and store would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendants would delete any sensitive information after they were no longer required to maintain it.

29. Plaintiff and Class Members were required to entrust their highly sensitive Private Information to Defendants, either directly or indirectly, and in exchange, Defendants promised by implication to reasonably protect that sensitive data.

30. Defendants knew that any breach and exposure of the data stored on its systems would result in the increased risk of identity theft and fraud for the thousands of individuals whose Private Information was compromised, as well as intrusion into those individuals' personal health matters.

31. Defendants derived economic benefits from collecting Plaintiff's and Class Members' Private Information—their respective businesses are built for that precise purpose. Without the required submission of Private Information, Defendants could not perform their operations or generate revenue.

32. Defendants had a duty to adopt reasonable measures to protect the PII of Plaintiff and the Class Members from involuntary disclosure to third parties.

33. Despite recognizing their duty to do so, on information and belief, Defendants failed to implement reasonable cybersecurity safeguards or policies to protect Plaintiff and Class Members' PII or trained their IT or data security employees to prevent, detect, and stop breaches of their systems. Rather, Defendants chose to store Plaintiff and the Class Members' PII on an unsecure network, leaving their PII vulnerable for cybercriminals to take. As a result, Defendants

leave significant vulnerabilities in their systems or third-party vendors systems, for cybercriminals to exploit and gain access to individuals PII.

**B. *Defendants' Data Breach***

34. In or around August 10, 2025, the cybercriminal syndicate CL0P exploited a vulnerability in the Oracle EBS software and then targeted and exfiltrated the Private Information of Plaintiff and Class Members.

35. On or around July 10, 2026, Defendant Estee Lauder reported the Data Breach to the Vermont Attorney General.[11]

36. On July 10, 2026, Defendant Estee Lauder reported that it suffered a data breach to the Vermont Attorney General, stating that the Data Breach compromised Private Information including, but not limited to, Social Security Numbers, Financial Account Codes, Credit and Debit Account Info, Government ID Numbers, Health Records.[12]

37. On July 17, 2026, Defendant Estee Lauder began sending letters to impacted individuals (the "Notice Letter").[13]

38. According to the Notice Letter, Defendant Estee Lauder became aware of a cybersecurity issue involving a vulnerability in the Oracle E-Business Suite system, which is used by Defendant Estee Lauder for HR management purposes.[14] On June 19, 2026, Defendant Estee Lauder determined through its investigation that on or around August 9, 2025, an unauthorized third party gained access to the Oracle E-Business Suite system and obtained personal information

[11] Office of the Vermont Attorney General, Security Breach Notices, https://ago.vermont.gov/categories/security-breach-notices (last visited July 16, 2026).
[12] Office of the Vermont Attorney General, Security Breach Notices, https://ago.vermont.gov/categories/security-breach-notices (last visited July 16, 2026).
[13] *See* Exhibit A – Plaintiff Stockwell's Notice Letter.
[14] *Id.*

of certain individuals.[15]

39. The impacted Private Information included names, postal and email addresses, dates of birth, Social Security numbers, passport numbers, financial account information, health information, and employment-related information.[16]

40. Despite their duties and alleged commitments to safeguard Private Information, Defendants did not in fact follow industry standard practices in securing individuals' Private Information, as evidenced by the Data Breach.

### C. *Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft*

41. Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendants.

42. As a result of Defendants' failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their PII is used;

b. The diminution in value of their PII;

c. The compromise and continuing publication of their PII;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent

[15] *Id.*
[16] *Id.*

researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen PII; and

h. The continued risk to their PII, which remains in the possession of Defendants and is subject to further breaches so long as Defendants fail to undertake the appropriate measures to protect the PII in its possession.

43. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

44. The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

45. Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

46. It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

47. One such example of criminals using PII for profit is the development of "Fullz" packages.

48. Cyber-criminals can cross-reference two sources of PII to marry unregulated data

available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

49. The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

50. Defendants disclosed the Private Information of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

51. Defendants' failure to properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

**D. *Consumers Prioritize Data Security***

52. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[17] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[18]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[19]

c. 89% of consumers stated that "I care about data privacy."[20]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[21]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[22]

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[23]

53. Defendants knew or should have known that adequate implementation of

---

[17] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf

[18] *Id.* at 3.

[19] *Id.*

[20] *Id.* at 9.

[21] *Id.*

[22] *Id.*

[23] *Id.* at 11.

cybersecurity and protection of PII, including Plaintiff and the Class's PII, was important.

**E. *Defendants failed to adhere to FTC guidelines.***

54. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendants, should employ to protect against the unlawful exposure of PII.

55. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the personal individual information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

56. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

57. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

58. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect individuals' data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an

unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

59. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**F. *Defendants Failed to Follow Industry Standards***

60. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendants. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

61. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

62. Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

63. These frameworks are applicable and accepted industry standards. And by failing

to comply with these accepted standards, Defendants opened the door to the criminals—thereby causing the Data Breach.

**G. *Plaintiff's Experience and Injuries***

64. Plaintiff is a former employee of Defendant Estee Lauder. Plaintiff was employed by Defendant Estee Lauder from October 2020 through May 2026.

65. In connection with his employment, Plaintiff provided Defendant Estee Lauder with his Private Information.

66. Plaintiff received a Notice Letter dated July 17, 2026, indicating that his Private Information was impacted in the Data Breach.

67. As a result, Plaintiff was injured by Defendants' Data Breach.

68. Plaintiff is very careful about the privacy and security of his Private Information. He does not knowingly transmit his Private Information over the internet in an unsafe manner. He is careful to store any documents containing his Private Information in a secure location.

69. Plaintiff provided his Private Information to Defendant Estee Lauder and trusted the company would use reasonable measures to protect it according to internal policies, as well as state and federal law. Defendant Estee Lauder obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

70. Plaintiff reasonably understood that a portion of the funds generated by his employment would be used to pay for adequate cybersecurity and the protection of his Private Information.

71. Through the Data Breach, Defendants compromised Plaintiff's Private Information.

72. Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft.

73. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[24]

74. Plaintiff fears for his personal financial security and worries about what information was exposed in the Data Breach.

75. Plaintiff suffered actual injury from the exposure and theft of his Private Information—which violates his rights to privacy.

76. Plaintiff suffered actual injury in the form of damages to and diminution in the value of his Private Information. After all, Private Information is a form of intangible property—property that Defendants were required to adequately protect.

77. Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendants Data Breach placed Plaintiff's Private Information right in the hands of criminals.

78. Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

79. Today, Plaintiff has a continuing interest in ensuring that his Private Information—which, upon information and belief, remains backed up in Defendant Estee Lauder's possession—is protected and safeguarded from additional breaches.

## V. CLASS ACTION ALLEGATIONS

80. Plaintiff brings this action on behalf of himself and the proposed Class ("Class"), defined as follows:

> All individuals residing in the United States whose PII was compromised in the Data Breach (the "Nationwide Class").

[24] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited July 16, 2026).

81. Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

82. Plaintiff reserves the right to amend the class definition.

83. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Federal Rule of Civil Procedure 23.

84. **Numerosity**. Plaintiff is representative of the proposed Class, consisting of thousands of members, far too many to join in a single action.

85. **Ascertainability**. Class members are readily identifiable from information in Defendants possession, custody, and control.

86. **Typicality**. Plaintiff's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendants, and the same unreasonable manner of notifying individuals about the Data Breach.

87. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. Plaintiff's interests do not conflict with Class members' interests, and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

88. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

i. Whether Defendants had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Private Information;

ii. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii. Whether Defendants were negligent in maintaining, protecting, and securing Private Information;

iv. Whether Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

v. Whether the Data Breach caused Plaintiff and the Class injuries;

vi. What the proper damages measure is; and

vii. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

89. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Nationwide Class)**

90. Plaintiff realleges all previous paragraphs as if fully set forth below.

91. Plaintiff and members of the Class entrusted their PII to Defendants. Defendant owed to Plaintiff and other members of the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

92. Defendants owed a duty of care to Plaintiff and members of the Class because it

was foreseeable that Defendants failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and members of the Class's PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

93. Defendants owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendants also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

94. Defendants owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants inadequate security protocols. Defendants actively sought and obtained Plaintiff' and members of the Class's personal information and PII.

95. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendants hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendants databases containing the PII—whether by malware or otherwise.

96. PII is highly valuable, and Defendants knew, or should have known, the risk in

obtaining, using, handling, emailing, and storing the PII of Plaintiff and members of the Class's and the importance of exercising reasonable care in handling it.

97. Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff and members of the Class's injury. Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and members of the Class's injuries-in-fact. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

98. Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Nationwide Class)**

99. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

100. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

101. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect the PII entrusted to them. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants duty to protect Plaintiff and the Class Members' sensitive PII.

102. Defendants breached their respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

103. Defendants violated their duties under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

104. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

105. But for Defendants wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

106. The injury and harm suffered by Plaintiff and Class Members was the reasonably

foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that Defendants were failing to meet their duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

107. Defendants' various violations and their failure to comply with applicable laws and regulations constitute negligence *per se*.

108. As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**COUNT III**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Nationwide Class)**

109. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

110. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

111. Defendants owed a duty to their current and former employees, contractors, students, and/or customers including Plaintiff and the Class, to keep this information confidential.

112. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' Private Information is highly offensive to a reasonable person.

113. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class (or their third-party agents) disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed

without their authorization.

114. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

115. Defendants acted with a knowing state of mind when it permitted the Data Breach because it knew their information security practices were inadequate.

116. Defendants acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

117. Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

118. As a proximate result of Defendants' acts and omissions, the private and sensitive Private Information of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

119. And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

120. Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Private Information are still maintained by Defendants with their inadequate cybersecurity system and policies.

121. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for

monetary damages will not end Defendants' inability to safeguard the Private Information of Plaintiff and the Class.

122. In addition to injunctive relief, Plaintiff, on behalf of himself and the other Class Members, also seek compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**PRAYER FOR RELIEF**

Plaintiff and Class Members demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and Class Members;

D. Enjoining Defendants from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E. Awarding Plaintiff and Class Members damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and Class Members in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and Class Members leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: August 7, 2026

Respectfully submitted,

By: */s/ W. Mark Lanier*
W. Mark Lanier
Texas Bar No. 11934600
**LANIER LAW FIRM**
10940 W. Sam Houston Pkwy N., Suite 100
Houston, TX 77064
Tel: 713-659-5200
Mark.Lanier@lanierlawfirm.com

Gary Klinger*
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
gklinger@milberg.com

Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: 954-525-4100
ostrow@kolawyers.com

**Pro hac vice forthcoming*

*Attorneys for Plaintiff and Proposed Class*